UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

VIRGINIA LeFEVER,

        Plaintiff,                      Case No. 2:11-cv-935
                                               JUDGE GREGORY L. FROST
       v.                                       Magistrate Judge E.A. Preston Deavers

JAMES FERGUSON, et al.,

        Defendants.


ALEX LeFEVER,

        Plaintiff,                      Case No. 2:12-cv-664
                                               JUDGE GREGORY L. FROST
       v.                                       Magistrate Judge E.A. Preston Deavers

JAMES FERGUSON, et al.,

        Defendants.


## OPINION AND ORDER

This matter is before the Court on the following filings:

(1)      The motion for summary judgment of Defendant Franklin County (ECF No. 97),[1] the memoranda in opposition of Plaintiffs Virginia LeFever (ECF No. 114) and Alex LeFever (ECF No. 75 in Case No. 2:12-cv-664), and Franklin County's reply memorandum (ECF No. 131); and

---

[1] All docket references in this Opinion and Order are to the Court's docket in Case No. 2:11-cv-935 unless otherwise indicated.

1

(2) Plaintiff Virginia LeFever's motion for partial judgment on liability against Defendant Franklin County (ECF No. 88), Franklin County's response in opposition (ECF No. 109), and Virginia's reply memorandum (ECF No. 123).

For the reasons set forth in more detail below, the Court **GRANTS** Defendant Franklin County's motion summary judgment (ECF No. 97) and **DENIES** Plaintiff Virginia LeFever's motion for summary judgment.  As a result of the Court's ruling, Franklin County is no longer a Defendant in this case.

## I. Background

This case arises out of Plaintiff Virginia LeFever's 1990 conviction for the aggravated murder of her husband, William LeFever in September 1988.  Twenty-two years after being sent to prison for the murder, the trial court judge vacated Virginia's conviction and released her from prison.  The basis for the trial court's ruling was the realization that Defendant James Ferguson, the forensic toxicologist in the Franklin County Coroner's Office who examined William LeFever's body in 1988, had lied at Virginia's trial about his credentials.  Following the trial court's ruling ordering Virginia's release from prison, the Licking County (Ohio) Prosecutor dismissed the indictment against Virginia.  In the cases before the Court, Plaintiffs sue Ferguson, Newark police officers Ken Ballantine and Bill Hatfield, then-Licking County Coroner Robert Raker, the City of Newark, Ohio, Licking County, and Franklin County.

William LeFever's death occurred while his and Virginia's divorce case was pending in an Ohio domestic relations court.  In August 1988, the domestic relations court awarded Virginia full custody of the couple's minor children (Plaintiff Alex LeFever and his siblings) during the pendency of the divorce case.  Virginia also obtained a restraining order against William.  The final divorce hearing was scheduled to take place on September 27, 1988, just six days after

William's death.  Also during this time period, Virginia was finalizing arrangements to move to California with the couple's children in order to take a new job.  (V. LeFever Aff. ¶ 3, ECF No. 114-1.)

One week before the final divorce hearing, William came back to the family home to have dinner with Alex and the other children, as authorized by an order of the domestic relations court.  William fell asleep on the couch after dinner and remained at the house overnight.  According to Virginia, William was scheduled to babysit the children the following day while Virginia, a nurse, was at work.  (*Id.*)  William acted strangely during the night, similar to the manner in which he acted when he had used illegal drugs in the past.  (There is no dispute that William had problems with substance abuse.)  William was roaming around the house naked and acting as if he was hallucinating.  (*Id.* at ¶ 4.)  The next day, Virginia discovered an old prescription bottle of an antidepressant (Elavil) that had been prescribed to her in the past.  Only a half tablet remained in the bottle even though there were approximately 20 pills left in the bottle the last time Virginia opened it.  (*Id.*)

Later that day, paramedics were called to the house after William became combative.  William went to the hospital, where he alternated between periods of calmness and lucidity to episodes of combativeness and incoherence.  William remained at the hospital the next day when his behavior worsened.  At some point, William admitted to a nurse that he had taken Virginia's prescription anti-depressant medication in an effort to kill himself.  Later that day, William went into cardio-pulmonary arrest and died.

After William died, the Newark (Ohio) police investigated the incident.  Dr. Patrick Fardahl of the Franklin County (Ohio) Coroner's Office performed an autopsy on William's body and found no physiological or pathological cause of death.  Dr. Fardahl delayed his

conclusion as to the cause of death pending the results of toxicology tests. At that time, Defendant Ferguson was the chief toxicologist for the Franklin County Coroner's Office. Plaintiffs allege that Ferguson and the other individual defendants manufactured false evidence to support a concocted theory that Virginia murdered William by injecting him with amitriptyline, arsenic, and strychnine. A toxicology report prepared by Ferguson, however, showed no presence of poisons such as arsenic or strychnine. Ferguson opined at trial that Virginia injected William with amitryptiline and that she must have also inserted ant killer and rodent bait into William's rectum. Ferguson's explanation of the ant killer and rodent bait was, according to Virginia, a way to square his theory with the fact that arsenic and strychnine were present in William's colon but not in his blood or urine. (ECF No. 114 at PAGEID# 3931.)

Virginia was ultimately convicted of aggravated murder and sentenced to life in prison. After Virginia's conviction, Ferguson wrote a "book or screen play" about the trial, portraying himself as a hero whose toxicology analysis solved William's death and proved that Virginia murdered him. Virginia contends that Defendants Ferguson, Ballantine, and Raker concealed exculpatory evidence and fabricated the theory of poisoning that led to Virginia's conviction. Among Virginia's contentions:

- Defendant Ferguson concealed his "countless prior acts of perjury" as well as his own conclusion that it was impossible to determine how arsenic got into William's body;
- Detective Ballantine concealed a witness statement relating to the lot numbers of syringes stocked at the nurse staffing agency where Virginia worked (relevant to Ferguson's theory that Virginia injected William with amitryptiline), as well as notes of a conversation with Dr. Fardahl in which Dr. Fardahl said he could not tell how the strychnine entered William's body;

4

- Dr. Raker concealed the fact that he could not conclude how arsenic and strychnine entered William's body.  (ECF No. 114 at PAGEID# 3933.)

Virginia maintained her innocence throughout.  In 2005, she brought a civil action to have William's official cause of death changed.  It was through this civil action that Virginia was able to discover Ferguson's checkered past.  In addition to the "concocted" results of the toxicology test, Virginia discovered that Defendant Ferguson lied about his background and credentials to be a forensic toxicologist.  At Virginia's murder trial, Ferguson testified that he received a degree from The Ohio State University in 1972.  In fact, Ferguson did not obtain his college degree until December 1987, less than a year before he began investigating William's death.  Yet, since the 1960s, Ferguson represented in various courts that he was a qualified forensic scientist and was permitted by Defendant Franklin County to testify as an "expert witness" at hundreds of criminal trials in which he lied about his qualifications.

In 2010, Ferguson pleaded no contest to falsification charges and was convicted of lying under oath.  Armed with evidence of Ferguson's lies and checkered past, Virginia sought a new trial.  In November 2010, the same judge who presided over her criminal trial two decades earlier granted Virginia's motion for a new trial and ordered Virginia's immediate release from prison.  In April 2011, the Licking County prosecutor dismissed the case against Virginia.  At the time of Virginia's release from prison, Alex was 26 years old.  Alex's lawsuit alleges that he was wrongly separated from his mother during his formative years and that his mother's arrest and subsequent conviction caused him to be unlawfully seized and taken into custody by Licking County Children's Services.

In Case No. 2:11-cv-935, Virginia filed suit against Ferguson, Officer Ken Ballantine, Officer Bill Hatfield, Dr. Robert Raker, the City of Newark, Franklin County, and Licking

County, alleging federal and state causes of action arising out of her wrongful arrest and conviction for her husband's murder. (ECF No. 2 in Case No. 2:11-cv-935.) In Case No. 2:12-cv-664, Alex followed suit, asserting federal and state claims against the same Defendants. Alex's amended complaint in this case alleges violation of his constitutional rights and tortious conduct by Defendants in connection with the injuries allegedly arising out of his mother's wrongful arrest and conviction for murdering William. Defendant Franklin County moves for summary judgment on all claims asserted by both Virginia and Alex; Virginia moves for summary judgment on liability as to Franklin County. (ECF Nos. 88, 97.) Those motions are now ripe for this Court's adjudication.

## II. Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods. v. United Techs. Auto., Inc..*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at

873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

    **A. Virginia's Claims against Franklin County**

Before proceeding to the merits of the claims against Franklin County, the Court must first determine what claims Virginia asserted against Franklin County and what claims are left.  Franklin County contends that Virginia's Complaint alleges only state-law claims for negligent hiring, supervision, and retention (Count XI) and respondeat superior (Count XIV).  (ECF No. 97 at PAGEID# 3469.)  Virginia disputes this in her opposition to summary judgment, maintaining that she has asserted Section 1983 claims against Franklin County under the authority of *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).  (ECF No. 114 at PAGEID# 3957.)  Whether Virginia has *Monell* claims against Franklin County is significant for purposes of this Court's adjudication of the County's motion for summary judgment: if the County is correct that Virginia has asserted only state-law claims against Franklin County, the Court may summarily grant summary judgment in favor of the County, as Virginia expressly abandoned all of her state-law claims against Franklin County.  (ECF No. 114 at PAGEID# 3923.)  *See Spengler v. Worthington Cylinders*, 514 F. Supp. 2d 1011, 1017 (noting that a plaintiff may not defeat summary judgment by asserting a claim not pleaded in the complaint).

    **1. Did Virginia Plead a *Monell* Claim Against Franklin County?**

To assess whether Virginia has asserted Section 1983 claims against Franklin County, the Court naturally looks to Virginia's Complaint in this action.  Virginia alleges Section 1983

claims in Counts I, II, III, IV, and V of the Complaint.[2] Each of these counts is structured similarly in that the first few paragraphs under each of them describe the alleged misconduct of the "Individual Defendants." (Compl. ¶¶ 89-93, 98-101, 104-109, 112-115, 118-123, ECF No. 2 at PAGEID# 20-26.) The final paragraphs under each count then go on to allege "policy" and "practice" in such a manner as to give notice that Virginia is asserting a *Monell* theory of liability. In Count I, Virginia alleges:

> 95.    These widespread practices, so well-settled as to constitute *de facto* policy in the *Newark Police Department*, were able to exist and thrive because municipal policymakers with authority over the Department exhibited deliberate indifference to the problem, thereby effectively ratifying it.
>
> 96.    The widespread practices described in the preceding paragraphs were allowed to flourish because *the City of Newark* declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

(*Id.* ¶¶ 95-96 (emphasis added).)

Counts II through V contain different language regarding "policy" and "practice," but also make clear that Virginia is asserting a *Monell* claim in those counts. Each of those counts alleges verbatim--

> The misconduct described in this Count was undertaken pursuant to the policy and practice *of the Newark Police Department* in the manner described more fully in preceding paragraphs, and was tacitly ratified by policymakers *for the Defendant City of Newark* with final policymaking authority.

(*Id.* ¶¶ 102, 110, 116, 124 (emphasis added).)

Notably, the "policy" and "practice" allegations are against the *City of Newark* or its police department only. There is no policy or practice allegation against Franklin County. Thus, Franklin County takes the sensible position that there are no Section 1983 *Monell* claims alleged against it in the Complaint, only state-law claims.

---

[2] Virginia has since abandoned Claim IV, which alleged a Section 1983 "failure to intervene" claim. (ECF No. 114 at PAGEID# 3923.)

Despite the Complaint being devoid of express *Monell* liability allegations against Franklin County, Virginia contends that there are Section 1983 claims pending against the County. (ECF No. 114 at PAGEID# 3957-58.) In support of her contention, Virginia uses the calling card of the haphazard pleader: she says she has done enough under the "notice pleading standard" to put Franklin County on notice that she has pursued a *Monell* claim against it all along. (*Id.* at PAGEID# 3958.) Citing *Spengler*, Virginia says she can "assert a cause of action at the summary judgment stage even if the label for that cause of action did not appear in the complaint, as long as the allegations in the complaint apprise the defendants of the grounds for relief." (*Id.* at PAGEID# 3958-59.) Unfortunately for Virginia, the notice pleading standard is not as forgiving as she would like it to be in this case.

The Court fails to see how the Complaint can give fair notice that Virginia sought to hold Franklin County liable under Section 1983. In the factual recitation preceding Counts I through V of the Complaint, and then in Counts I through V themselves, the Complaint is meticulous in laying out the facts underlying Virginia's claims. And significantly, Virginia employed language in Counts I through V that made it quite clear she was asserting Section 1983 *Monell* liability. That language, however, specified that she was pursuing *Monell* liability *against the City of Newark only*: she identified neither Franklin County nor Licking County (also named as a Defendant) as Defendants being sued in the Section 1983 claims asserted in Counts I though V. In light of the glaring omission of Franklin County as a Defendant in Counts I through V—when Virginia demonstrated the ability to detail her claims so meticulously—Franklin County could not possibly be on notice that Virginia was asserting a *Monell* claim against it. And it is entirely plausible for Franklin County to have viewed its omission from Counts I through V as having been deliberate: with Defendant Ferguson having lied about his credentials and Virginia accusing

9

Ferguson of framing her for her husband's murder, it is entirely reasonable for Franklin County (or anyone reading the Complaint for that matter) to have concluded that Virginia chose not to pursue entity liability on a theory that Ferguson's actions were so rogue as to make a "policy" or "practice" theory too implausible to pursue.

Nonetheless, Virginia argues that her Complaint gives fair notice that she is asserting constitutional claims against Franklin County because it contains allegations that "she was wrongfully convicted" as a result of constitutional violations perpetrated by Defendant Ferguson and further alleges that Franklin County is liable "because of Mr. Ferguson's acts." (ECF No. 114 at PAGEID# 3595 (citing Compl. ¶¶ 9, 42, 160-162).)  The Court fails to see, however, how these allegations could fairly inform Franklin County that it was being sued on a Section 1983 claim when it was not identified as one of the defendants being sued in Counts I through V. *Cf. Everson v. Leis*, 556 F.3d 484, 494-95 (6th Cir. 2009) (finding that the mere mention of the word "train" once in factual allegations was not enough to put defendant on notice of a failure-to-train claim under Section 1983).  Just because Virginia identified Ferguson (Franklin County's employee) as a principal bad actor and specified respondeat superior liability (a theory since abandoned) as to Franklin County does *not* give notice that Virginia was pursuing a *Monell* claim.  Since there is no *respondeat superior* liability in Section 1983, the recitation that Franklin County was liable because of Defendant Ferguson's acts does not put the County on notice that it is being sued on a *Monell* claim.  *See Everson*, 556 F.3d at 495 (reciting the rule that "Section 1983 liability must be premised on more than mere respondeat superior").  The more plausible interpretation of the *respondeat superior* allegations is that Virginia was seeking to hold the County liable on the *state law* claims under a *respondeat superior* theory.  For these reasons, the

10

Court finds that Virginia's Complaint does not give fair notice of a *Monell* claim against Franklin County.

The cases Virginia relies upon do not change this Court's view.  She cites *Spengler* as support for the proposition that she need not have pleaded the specific legal theory upon which she was suing Franklin County so long as she fairly apprised the County of her claim.  As set forth above, however, her allegations did *not* fairly apprise Franklin County that Virginia was asserting a Section 1983 *Monell* claim against it.  In any event, *Spengler* is readily distinguishable.  In *Spengler*, the plaintiff sued the defendant for age discrimination under the Age Discrimination in Employment Act ("ADEA"), but did not allege his theory of "retaliatory discharge" in a separate count of the complaint.  *Spengler*, 514 F. Supp. 2d at 1017.  Despite the plaintiff's failure to allege a separate count of retaliatory discharge under the ADEA, the Court nonetheless found that the plaintiff's allegations were sufficient to apprise the defendant of a retaliatory discharge claim.  *Id.*

In *Spengler*, however, it was readily obvious from the allegations in the Complaint that the plaintiff was asserting a retaliatory discharge claim.  Indeed, the Court cited a number of paragraphs of the plaintiff's complaint that made it impossible *not* to discern that plaintiff was alleging an ADEA claim under retaliatory discharge theory.  *Id.* at 1017-18.  And, significantly, the *Spengler* plaintiff expressly pleaded an ADEA claim against the defendant.  These circumstances stand in stark contrast to the present case, where Virginia's Section 1983 *Monell* claims failed to name Franklin County as a defendant being sued under that legal theory.  Accordingly, *Spengler* does not help Virginia's attempt to assert unpleaded *Monell* claims against Franklin County.

Virginia also cites *Joseph v. Port of New Orleans*, No. CIV.A. 99-1622, 1999 WL 615179 (E.D. La. Aug. 12, 1999), for the proposition that "pleading negligent hiring and supervision against a municipality is sufficient to put the municipality on notice of a *Monell* claim." (ECF No. 114 at PAGEID# 3959.)  But *Joseph* is of even less help to Virginia than *Spengler*.  In *Joseph*, the plaintiff expressly alleged liability against a municipality based on its "[f]ailing to hire, train, supervise, and instruct competent police officers for its rounds." *Joseph*, 1999 WL 615179 at *2.  This was sufficient under notice pleading standards to be construed as a Section 1983 claim based on the "custom or practice" of inadequate training. *Id.* at *3.  In contrast, Virginia's Complaint alleges in Count XI's "negligent hiring, supervision, and retention" claim only that the County "hired and/or employed Defendant James Ferguson despite having actual or constructive knowledge of his incompetence to perform the job for which Defendant County employed him." (Compl. ¶ 152, ECF No. 2 at PAGEID# 31-32.)  Not only is Virginia's allegation made solely in the context of a state law claim, it does not even describe potential *Monell* liability even if she had made it in reference to a Section 1983 claim.  Even liberally construed, Count XI alleges negligence only as to the County's hiring, retention, and supervision *of Defendant Ferguson*; it does *not* allege a policy, custom, or practice of hiring, retaining, and supervising unqualified forensic scientists.

Quite simply, Virginia did not plead a Section 1983 *Monell* claim against Franklin County.

### 2. Franklin County's Litigation Conduct

As a last-ditch effort to inject a *Monell* claim against Franklin County into this lawsuit, Virginia argues that the County's course of conduct in this lawsuit demonstrates that "it has

12

known it faces a *Monell* claim all along." (ECF No. 114 at PAGEID# 3960.)  Virginia points to the following circumstances:

- Franklin County's answer asserted as a defense that "[n]o statute, ordinance, regulation, custom, usage, or policy of Defendants proximately caused any injury to Plaintiff," (Ans. ¶ 14, ECF No. 20 at PAGEID# 99), which is a defense to *Monell* liability;

- The joint Fed. R. Civ. P. 26(f) report signed by the parties describes "policies of city and county defendants" as subjects of discovery;

- Virginia's deposition notice served on Franklin County under Fed. R. Civ. P. 30(b)(6) identified County Coroner "policies and procedures in effect from 1988 through 1992" as a deposition topic; and

- Franklin County did not object to the *Monell*-related topics identified in the Fed. R. Civ. P. 30(b)(6) notice, but rather produced a designee who testified on such topics and brought documents regarding the policies of the Coroner's toxicology lab. (*Id.*)

By citing these circumstances, Virginia is apparently relying upon the "course of proceedings test," which the Sixth Circuit has applied "to determine whether defendants in a § 1983 action have received notice of the plaintiff's claims where the complaint is ambiguous." *Cummings v. City of Akron*, 418 F.3d 676, 681 (6th Cir. 2005) (citing *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc)).  The Court is not persuaded.

First, the "course of proceedings" test applies, by its terms, when the plaintiff's complaint is *ambiguous* as to the nature of the Section 1983 claim asserted.  Virginia's Complaint in this case, however, is not ambiguous.  As described above, the Complaint describes the nature of Virginia's claims, including the Section 1983 claims, in considerable detail.  There is no

ambiguity concerning the nature of the *Monell* claims asserted in the Complaint: Virginia alleged them as against the City of Newark and no other entity. Thus, the Court rejects Virginia's reliance on the "course of proceedings" test as a basis to keep her nonexistent *Monell* claims against Franklin County alive.

Even if this Court were to indulge the "course of proceedings" test in this case, the Court would not allow Virginia to press a *Monell* claim against Franklin County. None of the circumstances identified above is a convincing indicator that Franklin County was somehow defending a *Monell* claim against Virginia all along. As to the inclusion in the answer of a defense that no statute, regulation, custom, usage, or policy caused Virginia's injury, the Court acknowledges that the language has some applicability to a *Monell* claim. But this defense is also arguably pertinent to the state-law claim of negligent hiring that Virginia alleged (and has since dismissed) in Count XI.

With regard to the Rule 26(f) report and the Rule 30(b)(6) deposition, the Court is also not persuaded that Franklin County's actions necessarily demonstrated an understanding that Virginia was pursuing a *Monell* claim against it. As the County argues, the scope of discovery under the civil rules is liberal: simply because Virginia was not asserting a *Monell* claim does not mean the policies and procedures of Franklin County were not discoverable. *See* Fed. R. Civ. P. 26(b)(1) (scope of relevant information in discovery is that which is "reasonably calculated to lead to the discovery of admissible evidence"). Moreover, Franklin County had good reason not to blink at any discovery regarding *Monell* issues. Alex LeFever's complaint, unlike Virginia's, alleged *Monell* claims against Franklin County. Thus, even if Franklin County knew that Virginia did not sue the County under a Section 1983 *Monell* theory, it also knew that it could not evade *Monell* discovery entirely due to the claims Alex pleaded.

14

For these reasons, the Court rejects Virginia's course-of-proceedings argument.  There is simply no basis upon which to conclude that Virginia has any *Monell* claims pending against Franklin County.

### 3.  State Law Claims

Having found that there are no federal claims pending against Franklin County, the Court would ordinarily proceed to the merits of the County's motion for summary judgment on the state-law claims asserted against it.   As noted previously, however, Virginia expressly abandoned her state-law claims against Franklin County.  (ECF No. 114 at PAGEID# 3923.)  Accordingly, the Court **GRANTS** Franklin County's motion for summary judgment on Virginia LeFever's Complaint.

### B.  Virginia's Motion for Partial Summary Judgment

In addition to opposing Franklin County's motion for summary judgment, Virginia filed her own motion for partial summary judgment against the County.  (ECF No. 88.)  In her motion, Virginia argues that she is entitled to partial summary judgment on liability because the record establishes the County's liability under *Monell* for Defendant Ferguson's actions in withholding exculpatory evidence.

As set forth above, Virginia did not plead a *Monell* claim against Franklin County.  For those same reasons, the Court therefore **DENIES** Virginia's motion for partial summary judgment.

### C.  Alex LeFever's Claims

Franklin County also moves for summary judgment on the Amended Complaint filed by Plaintiff Alex LeFever.  As against Franklin County, Alex alleges in his First Claim a Section 1983 *Monell* claim based on the purported violation of his due process right to "family integrity,"

or, more specifically, the "fundamental constitutional right to live with and be raised by his mother." (Am. Compl. ¶ 99, ECF No. 38 in Case No. 2:12-cv-664 at PAGEID# 191.) Alex also alleges a state-law claim for loss of consortium (Fourth Claim). (*Id.* ¶¶ 126-127 at PAGEID# 197.)[3]

As to the Section 1983 due process claim based on deprivation of Alex's right to "family integrity," this Court is not writing on a clean slate. This Court previously granted in part the motion to dismiss Alex's claims brought by Defendants Raker and Licking County. (ECF No. 80.) In its Order, the Court granted Raker's and Licking County's motion to dismiss the Section 1983 claim based upon the alleged deprivation of "Alex's right to be raised by his mother." (*Id.* at PAGEID# 1565.) In its decision, the Court found that applicable Sixth Circuit precedent— namely *Foos v. City of Delaware*, No. 10-4234, 2012 U.S. App. LEXIS 14842 (6th Cir. July 16, 2012) and *Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000)—foreclosed Alex from bringing a viable Section 1983 claim for "deprivation of familial association." (ECF No. 80 at PAGEID# 1566.) The Court accordingly dismissed Alex's First Claim as to Raker and Licking County.

In its reply memorandum in support of summary judgment, Franklin County argues that the same analysis dictates summary judgment in its favor on Alex's "familial association" claim. The Court agrees. For the same reasons the Court dismissed the First Claim as to Raker and Licking County, the Court likewise grants summary judgment to Franklin County.

With regard to the state-law claim for loss of consortium, Alex's only argument in opposition to summary judgment is that "[i]if his Court dismissed all of Virginia LeFever's state

---

[3] Alex's Amended Complaint also alleges a Section 1983 claim based on the Fourth Amendment and a state-law claim for intentional infliction of emotional distress ("IIED"). (Am. Compl., ECF No. 38 in Case No. 2:12-cv-664, at PAGEID# 193-196.) Franklin County is not a defendant as to either of these claims. Alex brings the Section 1983 Fourth Amendment claim against the individual defendants and Licking County only; he brings the IIED claim against individual defendants only. (*Id.* ¶¶ 111-115, 121-123.)

16

law claims, Alex LeFever's state law loss of consortium claim cannot proceed independently of Virginia's state law claims."  (ECF No. 75 in Case No. 2:12-cv-664 at PAGEID# 1216.)   As noted above, Virginia has expressly abandoned her state-law claims asserted against Franklin County and the Court granted summary judgment to the County on that basis.  *Ante* at 15.  Accordingly, by his own admission, Alex cannot proceed independently on his loss of consortium claim against Franklin County.

For these reasons, the Court **GRANTS** Franklin County's motion for summary judgment on Alex LeFever's Amended Complaint.

### III.    Conclusion

For the foregoing reasons, the Court **GRANTS** the motion for summary judgment of Defendant Franklin County (ECF No. 97) and **DENIES** the motion for partial summary judgment of Plaintiff Virginia LeFever (ECF No. 88).  Franklin County is no longer a Defendant in this action.

**IT IS SO ORDERED.**

>  **/s/ Gregory L. Frost**
>  **GREGORY L. FROST**
>  **UNITED STATES DISTRICT JUDGE**